In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-06-325 CR


____________________



TROYDON SHANNARD GLOVER, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 252nd District Court


Jefferson County, Texas


Trial Cause No. 94580






MEMORANDUM OPINION


 Appellant Troydon Shannard Glover was convicted of criminal conspiracy and
sentenced to life imprisonment in the Texas Department of Criminal Justice-Institutional
Division. Glover filed this appeal arguing that the judgment should be reversed because he
was denied the right to counsel based on the following: (1) he never asserted his right to
represent himself; (2) the trial court failed to admonish him sufficiently concerning the
dangers of self-representation; and (3) he withdrew his waiver of the right to counsel. We
hold that Glover clearly and unequivocally asserted his right to represent himself; his
decision to proceed pro se was made knowingly, intelligently, and voluntarily; and the trial
court did not abuse its discretion in denying Glover's requests to have counsel reinstated. 
We affirm.

FACTUAL BACKGROUND 


 Glover was indicted as a repeat felony offender for the offense of criminal conspiracy. 
He pled not guilty, and the case was tried to a jury. The jury found Glover guilty and 
assessed punishment at confinement in prison for life. 

 The case was called for trial on July 10, 2006. Prior to the commencement of voir
dire, the Court addressed the issue of appointed counsel's representation of Glover in the
following exchange:

 THE COURT: Now to the issue of whether or not you are the attorney. Mr.
Glover, it's my understanding you don't want [court-appointed counsel] to
represent you; is that correct?


 THE DEFENDANT: May I go into an explanation, Your Honor?


 THE COURT: No, sir. I just need to know if you have fired [court-appointed
counsel] or if you want him to -


 THE DEFENDANT: I'm firing [court-appointed counsel].


 THE COURT: Are you wanting to proceed throughout this trial pro se?


 THE DEFENDANT: I will need time to prepare. Yes, sir, I wish to be pro se;
but I need time to prepare.


 THE COURT: Well, today is the day that you're set for trial. We're going to
move forward today. My question is: Do you want to fire [court-appointed
counsel], which I have heard now from [counsel], I think; and you've indicated
that to the bailiff, correct?


 THE DEFENDANT: Yes, sir, I wish to fire [court-appointed counsel].


 THE COURT: And you understand the pitfalls with proceeding to trial
representing yourself?


 THE DEFENDANT: Yes, sir, I understand the pitfalls of representing myself.


 THE COURT: And you understand that this case has been set for trial for
quite a while now?


 THE DEFENDANT: No, sir.


 THE COURT: You don't understand that?


 THE DEFENDANT: I have not been informed it's been set for trial for quite
a while.


 THE COURT: Well, you understand that if you give up [court-appointed
counsel], that I'm going to hold you to the same standard that I would hold
[court-appointed counsel] to and [the prosecutors]? Do you understand that?


 THE DEFENDANT: Yes, sir.


 THE COURT: And understanding all that, do you want me to cut [court-appointed counsel] loose?


 THE DEFENDANT: Yes, sir, I wish you to cut [court-appointed counsel]
loose.


 THE COURT: [Counsel], you are free to go at this time. You are relieved of
your responsibilities. Before he walks out the door, I'm going to offer him to
you one more time and just make sure.


 THE DEFENDANT: Your Honor, I would like to present this motion firing
[court-appointed counsel], removing him from my case, that I have tried to file
in your court on January the 16th -


 THE COURT: Before you get into that, is he fired?


 THE DEFENDANT: Yes, sir.


 THE COURT: Nothing else to talk about on that issue; is that right?


 THE DEFENDANT: Yes, sir.


 THE COURT: [Counsel], you're free to go.


Before court-appointed counsel left the courtroom, the court instructed him to meet with
Glover in the back of the courtroom to make sure that Glover had all the discovery that had
been produced by the prosecution. Following voir dire and before jury strikes were made,
the following exchange took place:

 THE DEFENDANT: I would also like the record to reflect that I have an
attorney that's on retainer out of Dallas.


 THE COURT: And I want the record to reflect that we're now over an hour
and a half into this process and with that, you made the decision to represent
yourself after I admonished you not to and you chose to do that. So, we'll
move forward. You got 15 minutes.


 The following day, after voir dire but prior to the State's presentation of witnesses,
Glover presented to the court a hand-written motion for continuance, which was denied.
Glover asserted eighteen grounds in support of his motion for continuance, including that he
had not been given adequate time to prepare his defense. After Glover requested a
continuance, the following exchange took place:

 THE COURT: Anything in addition to this motion here?


 THE DEFENDANT: Yes, sir. I would like to also request the appointment
of counsel to help me with evidence.


 THE COURT: We'll get that taken care of immediately. It's going to be for
standby purposes, and it will be for that limited purpose. You understand that?


 THE DEFENDANT: Yes, Your Honor. I would also like to request
appointment of counsel to represent me.


 THE COURT: That's denied. You've already had that opportunity, but I will
appoint standby counsel to represent you. [Counsel], could I see you?


 THE DEFENDANT: Could I also request co-counsel?


 THE COURT: You can request all of it, but I want to make sure you
understand--and I'll give you a running request on that through the remaining
of the trial. So, you don't need to bring it up again.


 I want the record to be very clear that you were admonished yesterday
on several opportunities, and this Court is convinced that the sole purpose of
you firing [court-appointed counsel] at the time you did was to manipulate the
Court's docket so that you could get a continuance on your trial. I explained
that to you at the time, that you were making a grave error by terminating the
services of your court-appointed attorney . . . who was ready, willing and able
to assist you during the trial. You made that decision.


 And with that, I am going to get you standby counsel; and that counsel
will help you strictly dealing with legal issues during this trial. It's not your
investigator. It's not any of those things. But as far as you delaying this trial,
I asked you at the time yesterday if you were ready to proceed and told you that
the jury was waiting and that we were fixing to start a jury trial; and in the face
of that, you fired your attorney. Okay?


 So, with that, you have a running objection to that throughout the
remainder of this trial. That objection will be overruled. Your request will be
denied. The Court will appoint standby counsel immediately, and we're going
to proceed to trial. Hang tight.


The trial court appointed him standby counsel and noted on the record that standby counsel
was not familiar with the file, knew none of the facts, and assumed his duties as Glover's
standby counsel just prior to the State's presentation of its case. 

 After the appointment of standby counsel, the exchange continued:

 THE COURT: With that, we'll proceed. Mr. Glover, I also want to tell you
and I want the record to indicate you had mentioned yesterday that you had
hired an attorney out of Dallas and if you'll supply me with the name and
number of that attorney, then we'll be happy to try to contact that attorney and
get him down here.


 THE DEFENDANT: I need [stand-by counsel] to speak with my
grandparents.


 THE COURT: That's not [stand-by counsel]'s function. Have you hired an
attorney, yes or no?


 THE DEFENDANT: No, Your Honor.


 THE COURT: So, what you said yesterday in the record about having a
retained attorney, that was not true?


 THE DEFENDANT: Yes, Your Honor, it was true.


 THE COURT: Yes, it was true?


 THE DEFENDANT: I cannot answer your question adequately without
speaking to --


 THE COURT: We're ready to proceed.

 The case proceeded with the prosecution's opening statement and examination of
witnesses. The following day, before the trial resumed, Glover attempted to waive his right
to represent himself and asked that his court-appointed attorney be reinstated as his counsel. 
Glover stated, "I'm incapable of representing myself." The trial court denied this request. 
CLEAR UNEQUIVOCAL WAIVER OF THE RIGHT TO COUNSEL



 In issue two, appellant contends he was denied the right to counsel and argues in part
that he never requested to represent himself. Glover contends that he "merely asked that his
appointed trial counsel be removed and new counsel be appointed." In support of this
argument, Glover points to the exchange that took place between the court and himself at the
time that he fired his court-appointed counsel, as well as to the January 2006 written motion
he submitted to the court seeking to dismiss his court-appointed counsel. The trial court
overruled the motion on the day it was filed. Glover's written motion to dismiss counsel
technically sought to dismiss his court-appointed counsel and appoint new counsel; (1)
nonetheless, at the time of trial Glover clearly asserted his desire to proceed pro se in
response to the court's inquiry. Glover clearly and unequivocally asserted, "Yes sir, I wish
to be pro se." Likewise, Glover stated, "Yes sir, I understand the pitfalls of representing
myself." 

 Glover relies on Moreno v. Estelle, 717 F.2d 171 (5th Cir. 1983) in support of his
contention that "defendant's request to be relieved of counsel in the form of a general
statement of dissatisfaction with his attorney's work does not amount to an invocation of the
Faretta right to represent oneself, especially when made on the morning of trial." Id. at 176. 
However, the defendant in Moreno only expressed dissatisfaction with his attorney. Id. at
173. "At no point in the discussion . . . [between the court and the defendant], did the
defendant expressly inform the trial judge that he wished to represent himself without the
assistance of counsel." See id. at 174. Here, Glover expressly and clearly informed the court
that he wished to proceed pro se. (2) Moreno is distinguishable from the present case. We
conclude that Glover "clearly and unequivocally" waived his right to counsel. We overrule
issue two. 


SELF-REPRESENTATION ADMONISHMENT



 In Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the
Supreme Court recognized that the Sixth Amendment embodies a right to self-representation. 
Id. 422 U.S. at 819-821. The Court held that a defendant in a state criminal trial has a
constitutional right to proceed without counsel when he voluntarily and intelligently elects
to do so. Id. at 835. The Court recognized that "[w]hen an accused manages his own
defense, he relinquishes . . . many of the traditional benefits associated with the right to
counsel" and concluded that in order to represent himself, an "accused must 'knowingly and
intelligently' forgo those relinquished benefits." Id. The Court stated,

 Although a defendant need not himself have the skill and experience of a
lawyer in order competently and intelligently to choose self-representation, he
should be made aware of the dangers and disadvantages of self-representation,
so that the record will establish that 'he knows what he is doing and his choice
is made with open eyes.' 

Id. (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 279, 63 S.Ct. 236, 242,
87 L.Ed.2d 268 (1942)). 

 "'In determining whether a defendant has effectively waived the right to counsel, the
district court must consider various factors, including the defendant's age, education,
background, experience, and conduct.'" United States v. Jones, 421 F.3d 359, 363 (5th Cir.
2005) (quoting United States v. Joseph, 333 F.3d 587, 590 (5th Cir. 2003)). Moreover,
"'[t]he court must ensure that the waiver is not the result of coercion or mistreatment, and
must be satisfied that the accused understands the nature of the charges, the consequences
of the proceedings, and the practicality of waiving the right to counsel.'" Id. (quoting
Joseph, 333 F.3d at 590). (3) Courts do not require that specific questions be asked in warning
defendants. See Davis, 269 F.3d at 519. "[T]he trial judge must inform the defendant 'that
there are technical rules of evidence and procedure, and he will not be granted any special
consideration solely because he asserted his pro se rights.'" Williams v. State, 252 S.W.3d
353, 356 (Tex. Crim. App. 2008) (quoting Johnson v. State, 760 S.W.2d 277, 279 (Tex.
Crim. App. 1988)). The trial judge is not under a duty "to inquire into an accused's 'age,
education, background or previous mental history in every instance where an accused
expresses a desire to represent himself[.]'" Id. (quoting Goffney v. State, 843 S.W.2d 583,
584-85 (Tex. Crim. App. 1992)). Rather, it is left up to the discretion of the trial court to
determine the precise nature of the required warning, depending on the circumstances of the
individual case. See Davis, 269 F.3d at 519. 

 This court recently held that considering the totality of the circumstances in that case,
the defendant's decision to waive the right to counsel was knowing, intelligent, and
voluntary. See Grant v. State, 255 S.W.3d 642, 645-48 (Tex. App.--Beaumont 2007, no
pet.). In Grant, the defendant appealed his conviction and argued in part that the trial court
did not properly warn him of the dangers of self-representation under Faretta. We
recognized in Grant that the ultimate issue was whether the defendant made his decision
voluntarily, knowingly, and intelligently, i.e. whether the defendant actually understood the
significance and consequences of his decision. Id. at 646-47. 

 We employ a totality-of-the-circumstances approach in determining whether a 
defendant's decision to waive his right to counsel was voluntarily, knowingly, and
intelligently made. Id. at 647. In Grant we noted that such circumstances may include the
defendant's education or sophistication, the complex or simple nature of the charge, and the
stage of the proceeding, as well as whether the defendant was represented by counsel before
trial, whether standby counsel was appointed, and whether the defendant had prior
experience with the criminal justice system. Id. at 648. In Grant we recognized that
"'[a]lthough the practice of issuing specific warnings to defendants who wish to proceed pro
se is a good way-perhaps the best way-to insure that the requirements of Faretta are met,
it is not the only way.'" Id. (quoting United States v. Hafen, 726 F.2d 21, 25-26 (1st Cir.
1984)). 

 We found that Grant's invocation of his right to self-representation was "clear and
unequivocal," that this was not Grant's first experience with the criminal justice system, that
Grant's appointed counsel made no objection to the validity of Grant's decision to represent
himself during trial, and that the record reflected that Grant consulted with standby counsel
during the trial. Id. at 648-49. We noted that Grant made no complaints about his
consultations with standby counsel, nor did he file a motion for new trial complaining that
the advice of standby counsel was inadequate. Id. at 649. Considering the totality of the
particular facts and circumstances, we concluded that Grant's clear and unequivocal exercise
of his constitutional right was an informed, voluntary decision. Id.

 We hold under Grant that Glover's decision--to fire his court-appointed attorney on
the day of trial and proceed pro se--was knowingly, intelligently, and voluntarily made.
Court-appointed counsel was appointed to the case over a year prior to the trial date, and
appeared ready, willing, and able to proceed to trial when the case was called on July 10,
2006. When the court asked Glover if he wished to fire his court-appointed counsel and
proceed pro se, Glover stated that he did wish to proceed pro se, but that he would need time
to prepare. At that time, the court made it clear to Glover that there would be no delay in
the trial and that the court would move forward with the proceedings even if Glover chose
to represent himself. Knowing that he would not be given a continuance to prepare for trial,
Glover chose to fire his court-appointed counsel and represent himself. Like the defendant
in Grant, this was not Glover's first experience with the criminal justice system. Glover was
appointed standby counsel who was present during the remainder of the trial. Glover never
complained about the assistance provided by standby counsel nor did Glover file a motion
for new trial arguing that any advice of standby counsel was inadequate. Significantly, the
trial court here went a step further than the court in Grant and expressly admonished Glover
that he would be held to the same standard as the attorneys in the case. Under our prior
holding in Grant, and under the totality of the facts and circumstances of this case, we hold
that Glover knowingly, intelligently, and voluntarily waived his right to counsel. We
overrule issue one. 

WITHDRAWAL OF WAIVER OF THE RIGHT TO COUNSEL


 Glover argues, as a subpart to issue two, that he effectively withdrew his waiver of
the right to counsel. In 1986, the Court of Criminal Appeals stated in Funderburg v. State,
that "a defendant may . . . waive his right to represent himself once it has been asserted." Id.
717 S.W.2d 637, 642 (Tex. App. Crim. 1986) (citing McKaskle v. Wiggins, 465 U.S. 168,
104 S.Ct. 944, 79 L.Ed.2d 122 (1984)). The court in Funderburg also clarified that the
withdrawal of one's waiver of the right to counsel is "not subject to the same stringent
standards as the waiver of the right to counsel." Id. The court explained that a waiver of
one's right to self-representation may be found "'if it reasonably appears to the court that
defendant has abandoned his initial request to represent himself.'" Id. (quoting Brown v.
Wainwright, 665 F.2d 607, 611 (5th Cir. 1982)). The following year the legislature enacted
article 1.051 of the Texas Code of Criminal Procedure, which addresses the right to counsel. 
See Tex. Code Crim. Proc. Ann. art. 1.051 (Vernon Supp. 2007). Article 1.051(h)
provides:

 (h) A defendant may withdraw a waiver of the right to counsel at any
time but is not entitled to repeat a proceeding previously held or waived solely
on the grounds of the subsequent appointment or retention of counsel. If the
defendant withdraws a waiver, the trial court, in its discretion, may provide the
appointed counsel 10 days to prepare.


Id. art. 1.051(h). 

 A defendant's right to withdraw his waiver of the right to counsel is not without
limits. "Trial courts have the duty, and discretion, to maintain the orderly flow and
administration of judicial proceedings, including the exercise of a defendant's right to
counsel." Medley v. State, 47 S.W.3d 17, 23 (Tex. App.--Amarillo 2000, pet. ref'd)(citing
Faretta, 422 U.S. at 834 n.46). A defendant's "right to represent himself or choose his own
counsel cannot be manipulated so as to obstruct the orderly procedure in the courts or to
interfere with the fair administration of justice." Jordan v. State, No. 08-05-00286-CR, 2007
WL 1513996, at *5 (Tex. App.--El Paso May 24, 2007, no pet.) (not designated for
publication) (citing Hubbard v. State, 739 S.W.2d 341, 344 (Tex. Crim. App. 1987)). "A
defendant may not use his right to counsel to delay his trial." Id. (citing Culverhouse v. State,
755 S.W.2d 856, 861 (Tex. Crim. App. 1988)). Likewise, a defendant "does not have the
right to repeatedly alternate his position on the right to counsel and thereby delay trial . . . ." 
Medley, 47 S.W.3d at 23 (citing United States v. Pollani, 146 F.3d 269, 273 (5th Cir. 1998)). 
 A "decision of the trial court as to the effect the reclamation of the right by the defendant
would have on the orderly administration of justice will not be disturbed on appeal absent an
abuse of discretion." Id. at 24. 

 The Court of Criminal Appeals has held that, even for constitutional
claims, generally a party seeking to change the status quo bears the burden of
showing facts entitling him to relief. And, a criminal defendant who waives
an absolute right and seeks to reclaim that right occupies the status of one
seeking to change the status quo. 


Id. (citations omitted). Therefore, a criminal defendant who has waived the right to counsel
but then seeks to reclaim that right bears the burden of showing that his waiver would not (1)
interfere with the orderly administration of court business, (2) result in unnecessary delay or
inconvenience to witnesses, or (3) prejudice the State. Id. If the evidence presented by
defendant is rebutted by the State, the trial court, or the record, then the trial court does not
abuse its discretion in refusing to allow the right to be reclaimed. Id. 

 Here, Glover did not meet his burden. The record clearly establishes that the court
believed Glover fired his court-appointed counsel at trial in an effort to delay the trial and
that Glover's additional requests for counsel were related to the same. While Glover
requested that he be appointed an attorney to represent him, or to act as co-counsel, on the
second day of the proceedings, this request was made only after Glover's lengthy motion for
continuance was denied. Glover's request for counsel was viewed by the court as yet another
attempt to delay the trial. Finally, on the third day of the proceedings, during the State's
presentation of its case, Glover requested that his court-appointed counsel be brought back
in to represent him. There is no indication in the record that his court-appointed counsel,
who had been relieved of his responsibilities in the case two days earlier, was present or
otherwise available to defend Glover during the remainder of the trial. Weighing the effect
of the reclamation of the right by the defendant to be represented by counsel during the trial
of his case against the orderly administration of justice, we find the defendant has failed to
bring forth a sufficient record to sustain his burden to show an abuse of discretion by the trial
court. We overrule this subpart of issue two. Having overruled each of appellant's issues,
we affirm the judgment of the trial court.

 AFFIRMED. 

 
 __________________________________

 CHARLES KREGER

 Justice


Submitted on November 8, 2007

Opinion Delivered August 27, 2008

Do not publish


Before McKeithen, C.J., Gaultney and Kreger, JJ.

CONCURRING OPINION



 Once a defendant asserts the right of self-representation, the record must clearly
reflect that the defendant knows the dangers and disadvantages of self-representation and
unequivocally, intelligently and voluntarily chooses to represent himself. See Williams v.
State, 252 S.W.3d 353, 356 (Tex. Crim. App. 2008). In Williams, the Court of Criminal
Appeals explained:

 Once asserted, under Faretta, the trial judge must inform the defendant about
"the dangers and disadvantages of self-representation, so that the record will
establish that 'he knows what he is doing and his choice is made with eyes
open.'" When advising a defendant about the dangers and disadvantages of
self-representation, the trial judge must inform the defendant "that there are
technical rules of evidence and procedure, and he will not be granted any
special consideration solely because he asserted his pro se rights." 


Id. (footnotes omitted). As an example, the Benchbook for U.S. District Court Judges
suggests, among other things, that the defendant could be asked on the record whether he has
ever represented himself in a criminal action, understands the charge and possible
punishment, has studied law, knows the laws of evidence and criminal procedure,
understands he will be on his own and given no guidance or help by the court, knows he must
abide by the rules of evidence and procedure, and knows that it is generally unwise to
represent himself. See United States v. Jones, 421 F.3d 359, 363-64 & n.3 (5th Cir. 2005). 
The Benchbook suggests the trial judge should then ask the defendant whether, in light of
the possible penalty and the difficulties of representing himself, he still desires to represent
himself and give up his right to be represented by a lawyer. Id. The defendant should be
asked if the decision is entirely voluntary. Id. The trial court should make a finding that the
defendant has knowingly and voluntarily waived the right to counsel. Id. A written waiver
signed by the defendant should be filed. See Tex. Code Crim. Proc. Ann. art. 1.051(g)
(Vernon Supp. 2008). 

 This Court held in Grant v. State that the totality of the circumstances established that
Grant's exercise of his constitutional right to represent himself was an informed and
voluntary decision. See Grant v. State, 255 S.W.3d 642, 648 (Tex. App.--Beaumont 2007,
no pet.). One of the several circumstances this Court considered was advice of counsel:

 Grant was fully represented by appointed counsel at the time he made the
decision to represent himself. Counsel's job, while he remained appointed
counsel, included consulting with Grant on important decisions. See
Strickland v. Washington, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674
(1984). Presumably, the consultation would include warning Grant of the
dangers inherent in invoking his right of self-representation. 


Id. at 648. We noted Grant made "no claim the advice or representation counsel gave his
client at any time before or after trial was somehow inadequate." Id. at 649. After referring
to the presumption of appointed counsel's adequate representation, we noted there was no
indication of a conflict between Grant and his appointed counsel: "He did not request a
change in counsel." Id. 

 The relationship between appointed counsel and Glover was, apparently, different. 
Glover filed a motion claiming his appointed counsel was ineffective, and he requested new
counsel. And, unlike Grant, Glover asked the trial court to appoint counsel after he chose
to represent himself. 

 Although this case has factors distinguishing it from Grant, the totality of the
circumstances reflect Glover knew what he was doing and chose voluntarily to represent
himself. The trial court was not required to let Glover go back and forth between self-representation and representation by counsel. In effect, that would have permitted hybrid
representation, something a defendant is not entitled to as a matter of right. See Phillips v.
State, 604 S.W.2d 904, 907 (Tex. Crim. App. 1979) ("This Court has held that there is no
constitutional right to hybrid representation of partially pro se and partially by counsel."); see
also United States v. Oreye, 263 F.3d 669, 672 (7th Cir. 2001).

 The trial judge expressed his conclusion that Glover attempted to manipulate the court
and force a continuance. The record supports that conclusion. Glover had prior experience
in the criminal justice system. He was represented by appointed counsel at the time he chose
to represent himself. A defendant is not entitled to knowingly, intelligently, and voluntarily
waive the right to counsel, and then attempt to reassert the right to counsel in order to
interfere with the orderly administration of court proceedings, cause unnecessary delay or
inconvenience to witnesses, or cause prejudice to the State. The totality of the circumstances
establishes Glover knew what he was doing when he chose to represent himself, and his
choice was made with eyes open. See Williams, 252 S.W.3d at 356 ("To assess whether a
waiver is effective, courts consider the totality of the circumstances."). I concur in the
affirmance of the judgment. 

 ____________________________

 DAVID GAULTNEY

 Justice


Concurrence Delivered

August 27, 2008
1. While Glover's motion to dismiss his appointed attorney technically sought the
appointment of a new attorney, the defendant's right to counsel of one's own choice "must
be balanced with the trial court's need for prompt, orderly, effective, and efficient
administration of justice." Emerson v. State, 756 S.W.2d 364, 369 (Tex. App.--Houston
[14th Dist.] 1988, pet. ref'd). An accused may not wait until the day of trial to demand
different counsel or to request counsel be dismissed so that he may retain other counsel. 
Webb v. State, 533 S.W.2d 780, 784 (Tex. Crim. App. 1976).
2. The Fifth Circuit in United States v. Davis cautioned that "[t]he district court was
quick-perhaps too quick-to interpret Davis's expression of dissatisfaction with his lawyer
as a request to represent himself." Id. 269 F.3d 514, 518 n.5 (5th Cir. 2001). The Court
noted it stated in Moreno that "'a defendant's request to be relieved of counsel in the form
of a general statement of dissatisfaction with his attorney's work does not amount to an
invocation of the Faretta right to represent oneself, especially when made on the morning
of trial.'" Id. (quoting Moreno, 717 F.2d at 176). However, the Davis court stated the
following:

 

 The better course for the district court would have been to respond to Davis's
complaints against his lawyer rather than suggesting that Davis could represent
himself. After the district court made this suggestion, Davis adopted it. We
therefore proceed from the premise that Davis made a Faretta request to
represent himself.


Id.
3. "The Benchbook for U.S. District Court Judges, published by the Federal Judicial
Center, provides a guide for questions the judge can ask to convey the disadvantages the
defendant will likely suffer if he proceeds pro se. . . ." Jones, 421 F.3d at 363. The Fifth
Circuit Court further noted that it "has approved warnings much less thorough than the
guidelines presented in the bench book." Id. at 364.