

**NUMBER 13-07-00260-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**FELICIANO AVALOS, JR.,**                                           **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                           **Appellee.**

---

**On appeal from the 370th District Court
of Hidalgo County, Texas.**

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Benavides
Memorandum Opinion by Chief Justice Valdez**

Appellant, Feliciano Avalos, Jr., appeals his state-jail felony conviction for theft. *See* Tex. Penal Code Ann. § 31.03(e)(4)(A) (Vernon Supp. 2008). By two issues, Avalos contends that the trial court erred by (1) not properly admonishing him of the disadvantages of self-representation, and (2) denying his request for standby counsel at

trial.  Finding no factual basis to support Avalos's issues, we affirm the trial court's judgment.

## I. BACKGROUND

On May 2, 2006, Avalos was indicted for stealing a $2,700 plasma-screen television from a Sam's Club store.  Avalos initially retained L. Aron Peña, an attorney, to represent him.  At an October 16, 2006 pre-trial hearing, which was attended by Avalos, Peña, and the State, Avalos announced that he wanted to represent himself.   The following discussion took place between Avalos, the trial court judge, the Honorable Noe Gonzalez, Peña, and the State:

Avalos:     I'm presumed innocent.

Court:      No. What is your announcement?  You have no lawyer?
            You are proceeding without a lawyer; is that correct?

Avalos:     Yes, sir, Your Honor.

Court:      Are you sure you want to proceed without a lawyer?

Avalos:     Well, Your Honor—

Court:      It is a yes or no?

Avalos:     Yes, sir, Your Honor.

Court:      All right. Now, you understand that the constitution allows you
            your right to counsel?

Avalos:     Yes, sir, Your Honor.

Court:      And you chose your counsel.  And now you are choosing to
            proceed without your counsel; is that correct?

Avalos:     Yes, sir, Your Honor.

2

Court:      Because you had hired Mr. Aron Peña?

Avalos:     Yes, sir, Your Honor.

Court:      And you now have fired him?

Avalos:     Yes, Your Honor.

          . . . .

Court:      I really do think, and I'm going to suggest to you, that you get a lawyer.

Avalos:     Well, Your Honor, like I said—

Court:      No.

Avalos:     He who represents himself is a fool.

Court:      Well, then you are admitting you are a fool.

Avalos:     I'm—

Court:      Just listen to me, please. The frustration that you see in my eyes and in my face is that I am a true believer in the constitution of our country.

Avalos:     So am I.

Court:      Will you stop interrupting me. And because I'm a firm believer that the constitution protects our rights, there is a reason why we have a right to counsel. You may think that you are the most articulate individual in the city of Pharr, and that your music is superior, and the fact that you own your home makes you different than the police in the city of Pharr, and that's your theory.[1]

            But let me suggest something to you. Just because people have an idea that lawyers are scoundrels, or whatever you want to call them, lawyers are trained. And you get yourself a good lawyer. And that lawyers can protect your rights without

---

[1] Earlier in the hearing, Avalos opined that the City of Pharr had a "campaign" against him because he listened to different music and owned his own home.

3

going through a needless exercise of what the DA is going to do.

I mean, I'm not just pulling your leg here. If you go up against Mr. Orendain [the assistant district attorney assigned to the case], you are going up against —

Avalos:      The best, I believe.

Court:       Let me finish. And someone who doesn't interrupt me, either. You are going up against a man that is responsible for trying most of the capital murder cases in this County, the one who tries probably the most egregious crimes in this County and has the experience to do it. And you stand here indignant because you are charged with a crime that you believe that you are not guilty of, and that's cool. But just because you are indignant doesn't make you somehow or another a super advocate, all right.

Avalos:      Yes, Sir.

Court:       I have never said this on the record. I'm going to say it. There is an old saying in Spanish: "El que Dios no lo oye - El que no habla, Dios no lo oye."

Let me suggest something to you. Orendain is not Dios. And you shouldn't be talking to him the way that you are attempting to talk to him, because he is going to take advantage, because that's his job. His job is to make sure that he prosecutes those individuals that he believes are guilty. And he believes that you are guilty.

So you can hear the chuckles from the people. They are not laughing because they feel sorry for you, they are laughing because they are seeing this exercise of futility. They are seeing you say things that that man is just writing down like he is a secretary, and he is not a secretary, he is a full-fledged prosecutor. So once again, you have the absolute right to represent yourself. And I'm going to let you. But my advice to you is for you to get counsel. All right. If you are dissatisfied with counsel that you hired before, there are plenty of lawyers out there that can help you.

4

You are set for November 20. Okay?

Avalos: Your Honor, I appreciate your patience.

Court: Mr. Peña?

Peña: For the last three weeks I have been in trial.

Court: He didn't spend that much time talking about that because I cut him off.

Peña: Boy, that would be good, judge.

Court: I cut him off, Mr. Peña, because as far as I'm concerned, the most important thing for me is that he is telling me that he wants to represent himself. I am advising him not to.

Peña: I can stand by, if you would like me to stand by as counsel.

Court: Mr. Peña, he doesn't want you as counsel. And if he wants to represent himself, that's fine. I am advising him to get other counsel if he doesn't like the way you represent him. And he just is making certain requests from the DA's office. I am making the DA available to him sometime this week. He can do whatever he needs to do.

Peña: I think that he has dismissed me. I would like leave to withdraw.

Court: Any objection?

. . . .

Court: Okay. Mr. Peña, you are dismissed. Your Motion to Withdraw is granted. Please get me an order.

Pena: I will, Your Honor. Thank you very much.

On February 20, 2007, the case was transferred to an auxiliary court; the auxiliary court held a final pre-trial hearing, and called the case for trial. At the final pre-trial hearing,

5

the auxiliary court judge, the Honorable Jaime Garza, entertained a trial amendment regarding the indictment by the State. The following colloquy then took place:

Court:      We understand you're a layman, okay.

Avalos:     I'm on trial for my life, Your Honor. It's going to say whether I'm an honorable man or a thief.

Court:      You're rolling the dice, sir, and not us.

            Okay. Now, I'm going to tell you further and that's why I asked you if you had any legal experience. You seem to know what you're doing. However, you're still a layman. You're not a lawyer are you?

Avalos:     No, sir, Your Honor.

Court:      Okay. Do you ever know the words contempt of court?

Avalos:     Yes, sir, Your Honor.

Court:      All right. I'm going to hold you to the same standards that I'm going to hold her [the assistant district attorney].

Avalos:     Yes, Your Honor.

Court:      You're expected to respect this court and the jury. You're expected to follow the Rules of Criminal Procedure.

Avalos:     Yes, sir, Your Honor.

Court:      Otherwise you will be held in contempt.

Avalos:     Yes, sir, Your Honor

        . . . .

State:      And, Judge, originally the Defendant was—so the record can reflect a history of the trial. The arraignment—I show that the Defendant was arraigned on June 19, 2006 and Mr. Aron Pena, Sr. was originally on the case. And I believe that

6

Defendant did not want Mr. Pena to represent him and, therefore, he was allowed to withdraw. And the Defendant did not wish other court[-]appointed counsel[2] or to retain other counsel.

Court:     Well, my understanding is that this morning before Judge Gonzalez that you refused counsel; is that correct, sir?

Avalos:    Yes, sir, Your Honor.

Court:     Okay. And my understanding further is that he said you were—that he would let you proceed—

Avalos:    Pro se.

Court:     —by yourself as you desire; is that correct?

Avalos:    Yes, sir, Your Honor.

Court:     All right.  We're going to go ahead—and we've got a jury coming in at 2:45 which is in a few minutes. . . .

State:     And, Judge, just for the record if the court can make a finding that the Defendant has knowingly, intelligently, and voluntarily waived his right to a court[-]appointed counsel in this case.

Court:     That's what—I just made that finding. I just inquired and I will make that finding that you waived willingly, knowingly and voluntarily—

Avalos:    Your Honor, —

Court:     —your right to counsel, sir.  Yes, sir?

Avalos:    I was wondering why at least—I couldn't—they couldn't at least—what I was saying is I wanted to represent myself.  I've seen Defendants in other trial have at least an attorney, you

---

[2] There is nothing in the record to suggest that Peña was a court-appointed attorney or that Avalos was found indigent by the trial court so as to be eligible for a court-appointed attorney.  *See* TEX. CODE CRIM. PROC. ANN. art. 1.051(c) (Vernon 2005) ("An indigent defendant is entitled to have an attorney appointed to represent him in any adversary judicial proceeding that may result in punishment by confinement and in any other criminal proceeding if the court concludes that the interests of justice require representation.").

know, advising them on the legal maneuvers.

Court: Didn't you—

Avalos: This way I won't be in contempt—

Court: Didn't you tell—

Avalos: —of court, Your Honor.

Court: —tell Judge Gonzalez that you did not want any lawyer? Didn't you or not?

Avalos: Yes, sir.

Court: You just said you did.

Avalos: Yes, sir, Your Honor.

Court: All right.

Avalos: Yes, sir, I did.

Court: Now, you're changing your mind?

Avalos: No. No, I'll you know, Your Honor,—

Court: These are things you take—

Avalos: —I made my bed and I'll lie in it.

Court: Well, these are things you take up earlier, sir. And, the other judge sent the case and he made these rulings at your request.

Avalos: Yes, sir.

Court: And I inquired again and you agreed.

Avalos: Yes, sir, Your Honor.

Court:      Okay. Now, we're going to pick the jury shortly.

At trial, Avalos pleaded not guilty. The State called a Sam's Club employee and a McAllen police detective. Avalos testified in his own defense, and called his wife and daughter to testify. The jury found Avalos guilty of theft. At the punishment phase, the trial court sentenced Avalos to two years in the Texas Department of Criminal Justice and ordered him to pay $2,900 in restitution. Avalos's sentence was suspended, and he was placed on community supervision for three years. This appeal ensued.

## II. DISCUSSION

By his first issue, Avalos contends that the trial court did not properly admonish him regarding the dangers and disadvantages of self-representation. We disagree.

The Sixth Amendment to the United States Constitution and Article I, Section 10 of the Texas Constitution provide that a defendant in a criminal trial has the right to assistance of counsel. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. The Sixth Amendment also includes the reciprocal right to self-representation. *Williams v. State*, 252 S.W.3d 353, 356 (Tex. Crim. App. 2008) (citing *Faretta v. California*, 422 U.S. 806, 818 (1975)); *see also Oliver v. State*, 872 S.W.2d 713, 715-16 (Tex. Crim. App. 1994). Before being permitted to represent himself, a defendant must be made aware of the dangers and disadvantages of self representation and must "knowingly and intelligently" forego the benefits of having counsel.[3] *Faretta*, 422 U.S. at 835; *Geeslin v. State*, 600 S.W.2d 309, 313 (Tex. Crim. App. 1980); *see also Hatten*, 71 S.W.3d 332 334 (Tex. Crim. App. 2002) (holding that despite *Faretta*, waiver of counsel must be "knowing, intelligent and

---

[3] Avalos does not challenge the "knowingly and intelligently" requirement.

9

voluntary.").

A waiver will not be presumed or implied from a silent record. *See Carnley v. Cochran*, 369 U.S. 506, 516 (1962). Rather, the record must show that the defendant intelligently and understandingly elected to proceed without counsel. *Id.*; *Goffney v. State*, 843 S.W.2d 583, 585 (Tex. Crim. App. 1992).

When advising a defendant about the dangers and disadvantages of self-representation, the trial judge must inform the defendant "that there are technical rules of evidence and procedure, and he will not be granted any special consideration solely because he asserted his pro se rights." *Johnson v. State*, 760 S.W.2d 277, 279 (Tex. Crim. App. 1988). "'[C]ourts indulge every reasonable presumption against waiver' and . . . 'do not presume acquiescence in the loss of fundamental rights.'" *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). To assess whether a waiver is effective, courts consider the totality of the circumstances. *Williams*, 252 S.W.3d at 356.

It is clear from the record that Auxiliary Court Judge Garza warned Avalos that he was "expected to follow the Rules of Criminal Procedure." Judge Garza further warned Avalos that the court would hold him to the same standards as the assistant district attorney that was prosecuting the case. Given Judge Garza's admonishments and Judge Gonzalez's comments, Avalos went to trial with "his eyes wide open." *Johnson*, 760 S.W.2d at 279. Avalos's first issue is overruled.

By his second issue, Avalos contends that the trial court erred by not granting his request for the appointment of standby counsel. Yet, Avalos neither frames the standard of review nor explains how the alleged "error" is reversible. It is well established that an accused has no absolute right to hybrid representation. *E.g., Landers v. State*, 550

S.W.2d 272 (Tex. Crim. App.1977). A trial court may, in its discretion, however, permit both counsel and the accused to jointly participate in the case. *See Webb v. State*, 533 S.W.2d 780, 784 n.2 (Tex. Crim. App. 1976). The record in this case indicates that Avalos eventually withdrew the request by stating, "I made my bed and I'll lie in it."

Even if we were to construe Avalos's request as a re-assertion of his right to counsel, a defendant's right to withdraw his waiver of the right to counsel is not without its limits. "Trial courts have the duty, and discretion, to maintain the orderly flow and administration of judicial proceedings, including the exercise of a defendant's right to counsel." *Medley v. State*, 47 S.W.3d 17, 23 (Tex. App.–Amarillo 2000, pet. ref'd) (citing *Faretta*, 422 U.S. at 834 n.46). A defendant "does not have the right to repeatedly alternate his position on the right to counsel and thereby delay trial." *Id*. (citing *United States v. Pollani*, 146 F.3d 269, 273 (5th Cir. 1998)). A "decision of the trial court as to the effect the reclamation of the right by the defendant would have on the orderly administration of justice will not be disturbed on appeal absent an abuse of discretion." *Id*. at 24. In this case, the auxiliary court could have viewed Avalos's request as an attempt to delay a trial that had been set for November 20, 2006, but did not begin until February 20, 2007. Therefore, we find no abuse of discretion. Avalos's second issue is overruled.

## III. CONCLUSION

The judgment of the trial court is affirmed.

_____
ROGELIO VALDEZ
Chief Justice

Do not publish. TEX. R. APP. P. 47.2(b).
Memorandum Opinion delivered and
filed this the 30th day of December, 2008.

11